## KAVANAGH *vs.* SAUNDERS *& al.*

From the time of the passage of *Stat.* 1822, *ch.* 209, to that of *Stat.* 1831, *ch.* 520, a debtor committed on mesne process, might be enlarged by giving either a bail bond for his appearance, or a bond conditioned not to depart without the exterior limits of the goal yard.

Where a debtor, committed on mesne process, reciting that he was then " a prisoner at the suit of *M. K.*," and conditioned that he would not depart out of the exterior limits of the goal yard, the description of the suit in the recital was held sufficient.

No bonds are held void for ease and favor, unless given to the sheriff or arresting officer.

If an officer, having a debtor lawfully in his custody on mesne process, require, for his enlargement, a bond containing more than is authorised by law, it seems that the debtor may be considered under duress, so far as respects such bond.

But if the debtor, in order to obtain his enlargement, voluntarily offers to the creditor other or greater security than the statute requires, and it is accepted ; it becomes a valid contract between the parties.

The *Stat.* 1822, *ch.* 209; prescribing a mode in which an imprisoned debtor may obtain his liberation from close confinement, by giving a bond to the creditor, has not excluded all other modes ; but has left the parties to adopt any other, not contrary to law.

Therefore where a debtor, committed on mesne process, gave bond to the creditor, conditioned not only that he would not depart without the exterior limits of the gaol yard, but also that he would " surrender himself to the gaol keeper, and go into close confinement as is required by law ;" it was held that this last condition, not being required by the statute, did not vitiate the bond ; and that being insensible and uncertain, it might be rejected, without affecting the validity of the residue as a statute bond.

THIS action, which was debt on bond, was submitted to the decision of the court upon a case stated by the parties, as follows.—

On the first day of *March*, 1830, the plaintiff sued out a writ of attachment against the defendant *Saunders*, by virtue of which he was arrested and committed to prison. The writ was returnable at *April* term. On the fourth day of *March* the debtor was enlarged, by giving to the plaintiff the bond now in suit; conditioned " that if the above bounden *John Saunders*, now a prisoner in the State's gaol in *Augusta*, within the county of *Kennebec*, at the suit of *Morris Kavanagh*, of *Hallowell*, in said county tailor, will not, from the time of the execution of this bond, depart without the exterior bounds of the gaol yard, until lawfully discharged, and will surrender himself to the gaol keeper, and go into close confinement as is required by law, then," &c. Soon afterwards, and before judgment in that suit, he left this State, into which he has never returned.

*W. W. Fuller* and *Bachelder*, for the plaintiff.

*Evans*, for the defendants.

PARRIS J. delivered the opinion of the Court, at a subsequent term.

The first point taken in the defence is, that the bond declared on is void, because it is not a bail bond authorised by *Stat.* 1821, *ch.* 67 ;—and the counsel have referred to the case of *Holmes v. Chadbourn* in this court, 4 *Greenl.* 10, in which it is stated in the marginal abstract to have been decided, that when a debtor, committed on mesne process, is enlarged on bond before the return day, the condition should be for his appearance at court, and not for his remaining within the debtors' limits.

The condition of the bond in that case was for the debtor's appearance, in the usual form of bail bonds given before commitment. The creditor had treated it as a bail bond under the Statute of 1821, *ch.* 67, by bringing *scire facias*, and pursuing his remedy under that statute, and the defendants admitted it to be such, and claimed the protection of the statute ; and the court sustained it as a statute bail bond, and decided that a bond for the debtor's ap-

pearance at court might be taken, as well after commitment on mesne process as before; and repudiated the position, contended for by the defendants' counsel, that, after commitment, no bail could be taken for appearance at court, but only a bond for the liberties of the prison. But the court did not decide that, under such circumstances, the condition of the bond must necessarily be for the debtor's appearance at court, and that a bond, with a condition not to depart without the bounds of the gaol yard, would be illegal and void. To have thus decided, the court must have gone directly in the teeth of the Statute of 1822, *ch.* 209, *sec.* 4, which was in force at the time when the bond declared on in *Holmes v. Chadbourn* was given. By that statute, it is provided that "whenever any person who is or may be imprisoned for debt on mesne process, or execution, shall give bond to the creditor with one or more sureties, approved by the creditor, or two justices of the peace, *quorum unus*, in double the amount for which he is imprisoned, conditioned, that from the time of executing such bond, he will not depart without the exterior bounds of the gaol yard, until lawfully discharged, and if imprisoned on execution, further conditioned that he will surrender himself to the gaol keeper, and go into close confinement, as is required by law, the gaol keeper shall release him from close confinement, without requiring any other condition in such bond."

A similar statute provision had been in force in Massachusetts long before the separation, *Stat.* 1784, *ch.* 41, *sec.* 9, and continued as law in this State, until the general repealing act was passed in 1821, *ch.* 180, when the whole statute of 1784 was repealed. From the time when our repealing act was passed, which was *March* 21, 1821, until the time when the act for the relief of poor debtors was passed, on the 9th of *February* 1822, *ch.* 209, there was no provision for the liberating a debtor committed to prison on mesne process, except by giving a bail bond conditioned for his appearance at court. Since then and until the act for the abolition of imprisonment of honest debtors for debt, *Stat.* 1831, *ch.* 520, debtors, committed on mesne process, might be liberated by giving a bail bond, as was the case in *Holmes v. Chadbourn ;*—or by giv-

ing a bond not to depart without the limits of the gaol yard, as provided in the 4th *sec.* of *stat.* 1822, *ch.* 209. The bond declared on in this suit cannot, therefore, be avoided for the reason that it was not given conformably to the act regulating bail in civil actions, *stat.* 1821, *ch.* 67.

It is further contended, that the description of the cause of arrest and commitment is imperfect, and that the same particularity of description is required in a bond for the liberties of the gaol yard, as in a common bail bond. The latter is given to the Sheriff by the name of his office, and for the party's appearance at the day; and upon non-performance of the condition by the avoidance of the principal, the judgment creditor has his remedy by *scire facias* against the bail. It is, therefore, necessary that there should be such minuteness of description in the bond, that it may therein distinctly appear in what suit it was taken, and for what the bail were answerable; that the bond might, with certainty, apply to that suit only. But the bond for the liberties of the gaol yard is given to the party, at whose suit the debtor is committed, and consequently there can arise no doubt as to the liabilities assumed by the obligors. They bind themselves to the creditor, that the debtor will not depart without the exterior bounds of the gaol yard, until lawfully discharged from that particular arrest. Their contract can apply to no other suit. If the principal observes the condition, the sureties are safe; if he break it, they may be liable to the creditor to the amount of his debt. But as that is not ascertained until judgment, it could not have been inserted in the bond. It is apparent from the instrument itself, that the principal obligor was a prisoner on mesne process at the suit of the plaintiff, and that fact is agreed by the parties; and also that the bond was given to procure his release, and that upon its being executed, he was set at liberty. It is not perceived that either the principal or sureties can be endangered, by reason of there not having been inserted in the bond a more full description of the suit, on which the former was arrested; and so long as it is not specially required, as necessary to the validity of the transaction, the bond is not considered mate-

54

rially defective on that account.   Even in a bail bond, if the condition is, in effect, that the party shall appear, according to the design in the writ, it is sufficient; no set form of words is necessary.

It is also contended, that the bond is void, having been given for ease and favor.   If it had been a bail bond, and given to the sheriff with any other condition than that for the appearance of the party at the return of the writ, the objection would have been unanswerable; the bond would have been void.   The statute 23, *Hen.* 6, *ch.* 9, which has been adopted here as our common law, expressly declares it so.   But it was early decided, and has been ever since held, that this statute is confined to obligations given to the sheriff, and does not extend to such as are given to or for the benefit of the plaintiff.   As the bond under consideration was not given to the sheriff, it is not liable to this objection.

It is further contended, that the bond was given under duress of imprisonment, and for that cause is void.   The principle of law applicable to this point is, that if a man be under illegal restraint of liberty until he gives a bond, he may allege this duress and avoid the extorted bond.   But if a man be lawfully imprisoned, and either to procure his discharge, or on any other fair account, gives a bond, this is not by duress of imprisonment, and he is not at liberty to avoid it.   There is no pretence that the imprisonment of *Saunders* was illegal.   It was under regular and valid process, founded on a good cause of action, and executed by an officer duly authorised for that purpose.   Neither is there any evidence or circumstance in the case tending to show that he was required, either by the creditor or the officer who held him in custody, to procure such a bond as the one before us, as a condition of his discharge from imprisonment.

When a debtor is restrained of his liberty in due course of law, and offers such security as the statute requires, either as bail, or for the liberties of the gaol yard, the officer is bound to discharge him, and if he do not, the debtor has ample remedy.   If the officer still hold him in custody, and, as a condition to his discharge, require more than the law authorises, the debtor may then, perhaps,

be considered as under duress, and if so, whatever he is compelled to do, to procure his release, beyond what the law requires, may be avoided. But if the imprisoned debtor, for the purpose of procuring his discharge, without any such compulsion, voluntarily offers to the creditor other or greater security than the statute requires, and it be accepted, it becomes a valid contract between the parties and may be legally enforced. Such is the character of the transaction under consideration. A debtor lawfully imprisoned, for the purpose of procuring his discharge, voluntarily offers to the creditor a bond which is accepted. The obligor, after having had the full benefit of the contract, must be bound by it. There is nothing like duress in the case.

The argument *ab inconvenienti,* against this mode of liberating from prison those who are committed on mesne process, would deserve much respect and consideration from those who have the power of modifying the law. The difficulties are fully stated in *Whiting v. Putnam,* 17 *Mass.* 175, referred to in the argument of the defendant's counsel. But it is to be recollected, that there are difficulties, which the debtor is not required to encounter. He may, by giving a common bail bond to the sheriff, avoid them all; and such a bond may be given at any time, as well after commitment on mesne process as before. If he and his sureties prefer the other course; if they choose to give bond for the liberties of the gaol yard, rather than for the debtor's appearance at court; if they prefer to incur the liabilities of the former rather than the latter course, why should they complain of the law or its administration? But although such a provision may be inconvenient, yet so long as it is law, it must be administered. The evil, if there were any, is however probably now remedied by the statute for the abolition of imprisonment of honest debtors, before referred to.

The only remaining question is, as to the effect of the second part of the condition upon the validity of the bond. The whole condition is, that *Saunders* will not depart without the exterior bounds of the gaol yard until lawfully discharged, *and will surren-*

Kavanagh *v.* Saunders & al.

*der himself to the gaol keeper, and go into close confinement as is required by law.*

By recurring to the 4th *sec.* of the *Stat.* 1822, *ch.* 209, before recited, it will be perceived, that the condition of this bond is such as is required of those who are committed on execution, and that in cases of commitment on mesne process, the words in italic are to be omitted. The law does not require, that the debtor, committed on mesne process, shall ever surrender himself to the gaol keeper and go into close confinement, after having once given bonds for the liberties of the gaol yard ; but it does require, that the judgment debtor committed on execution and thus enlarged shall, under certain circumstances, surrender himself, as is provided in the 21st *sec.* of said act. The case shows that the commitment was on mesne process, and the error undoubtedly crept in through inadvertence. The counsel for the defendants contend, that the addition of the clause in italics renders the whole instrument void : and that, as the legislature have authorised arrests and imprisonment for debt, and also have prescribed the mode of release and the degree of personal liberty to which the debtor shall be entitled on certain conditions, common law principles have no applicability. So far as it respects the liability of the debtor's person to arrest, the mode of imprisonment and release, the principles of the common law are not to be applied, especially where the manner is pointed out by statute ; but the validity of the bond, whether taken conformably to the statute or not, is to be tested by these principles. The statute has prescribed a mode by which an imprisoned debtor may obtain an enlargement from close confinement by giving bond for the liberties of the gaol yard, but it has not excluded all other modes of doing it. This statute was intended to secure the debtor against the oppression of the creditor, by prescribing the manner in which a release from personal restraint might be made certain, whether the creditor would or would not consent ; but it has not, like the *Stat.* 23, *Hen.* 6, declared that a bond taken in any other form shall be void. It has left it to the parties to agree upon such other mode as they please, not however contravening the principles

of the common law. Whether the debtor obtain more indulgence or less, whether he agree to terms more or less onerous than the statute provides, are not circumstances by which the validity of his contract is to be conclusively tested. The case of *Winthrop v. Dockendorff*, 3 *Greenl.* 156, and the cases there cited, fully sustain this position.

It is true, that such is not the law relating to bail. But this depends upon the strong phraseology of the ancient statute above referred to, which has become our common law, and which in the language of another " made sure work of it, not leaving it to exposition what bonds should be taken ; and therefore adding that bonds taken in any other form should be void." *Maleverer v. Redshaw*, 1 *Mod.* 35. Accordingly it has been decided, that the condition of such bonds must be for the appearance of the party, and for no other purpose, so that if there be any other condition expressed in the bond, or the bond be single without any condition, or be with an impossible one, the bond is void. 2 *Saund.* 60, *note* 3. In the condition of the bond before us we perceive nothing by which the whole instrument is to be avoided. The rule of law is, that if a bond be conditioned for the performance of a thing *malum in se*, or against a positive law, not only is the condition void, but the bond also ; but if the condition be only to do a thing contrary to a maxim of law, the obligation is good. But here is nothing immoral or prohibited ; nothing but what has been voluntarily assented to by the defendant, and in consequence of which the principal obligor has derived the expected benefit. The bond is therefore, not void in consequence of the insertion of the latter clause in the condition. To this point numerous authorities might be cited. Even where bonds are taken to public officers under statute provisions, and the conditions of the bond exceed the requisitions of the statute, it has been often decided, that the excess may be rejected as void, but that the bond shall remain good for the residue. In *Armstrong v. The United States*, 1 *Peter's Circuit Rep.* 46, *Washington J.* held, that when a statute bond is taken, it ought to conform, in substance at least, to the requisitions of the

statute; and if it go beyond the law, it is void, at least, so far as it does exceed those requisitions. That was a case where a bond was given by a collector of the internal revenue, under a statute of the United States, condititioned that the collector had accounted and would account for all taxes collected or to be collected. The court held the bond void so far as it related to collections made previous to its execution, but good for the residue. The same principle is recognized as law in *Greenfield v. Yeates*, 2 *Rawle's Rep.* 158. So in a recent case in 7 *Bing.* 423, *Collins v. Gwynne.* The action was on a bond given by a collector of taxes. By statute, the bond given to the commissioners by a collector of taxes is to be conditioned for demanding the taxes, enforcing the provisions of the act, and paying the sums collected to the receiver general. The bond, on which the defendant was sued, contained those conditions, and also a condition for accounting and paying to the commissioners. It was held that this latter condition might be rejected as surplusage, and did not avoid the bond. In the course of his opinion, *Tindal, C. J.* said, " if the condition had been solely to pay the commissioners, it would have imported an illegal act, and the bond would have been void. But it becomes unnecessary to consider that, because there is a separate condition, under which the obligor is to pay the receiver general. I cannot see why we are to call in aid a distinct condition, which may be illegal, to vitiate that which is clearly legal." So in the case of a probate bond, it was said by *Wilde J.* in delivering the opinion of the court in *Hall v. Cushing*, 9 *Pick.* 395, that " in an action on such a bond, the plaintiff cannot be entitled to judgment, unless the bond is conformable to the statute in all its material parts, and if more be added than the law requires, although it will not vitiate the whole bond, unless the matter be illegal, yet no breach can be assigned in any part of the condition not included within the requisitions of the statute." In all the cases to be found in the books, where bonds for the liberties of the gaol yard have been held not good within the statute but good at common law, the bonds did not conform to the statute in all their material parts; the imperative requisitions of

the statute were not complied with. In each of the cases of *Clap v. Cofran,* 7 *Mass.* 98; *Freeman v. Davis, ib.* 200; *Burroughs v. Londer,* 8 *Mass.* 373, the penalty of the bond was less than double the sum for which the prisoner was committed, and in this respect did not, in a material part, conform to the statute. *Morse v. Hodsdon,* 5 *Mass.* 314, was debt on a replevin bond, in which a material part of the condition required by statute was omitted, and a different and more onerous engagement substituted; and *Winthrop v. Dockindorff,* before referred to, was on a bond given when there was no existing statute upon the subject.

We are not, however, called upon in this case to decide whether a superadded condition, beyond what the statute requires, may be rejected as surplusage and leave the residue good as a statute bond, as we are satisfied that the latter clause in the condition of this bond is to be rejected upon a different principle.

The plaintiff has alleged a breach of the first part of the condition, and from the case it appears that this was broken soon after the execution of the bond. The debtor did depart without the exterior bounds of the gaol yard, not having been lawfully discharged. But suppose he had continued within the gaol yard until the rendition of judgment, and for thirty days thereafter, his body not having been taken on execution. He would then have been lawfully discharged. The *Stat.* 1821, *ch.* 110, *sec.* 5, expressly declares, that he shall be no longer held in prison upon such process. That portion of the condition, which is now alleged to have been broken, would, in the case supposed, have been fully kept. Will it be contended that under any circumstances an action could be sustained for an alleged breach of the residue of the condition, even if he had never surrendered himself to the gaol keeper, and gone into close confinement? How would the breach be assigned? That the obligor did not surrender himself, &c. as is required by law; and the answer would be that he could not do it, for there was no law requiring it. When would the condition be broken? Not until he neglected to do what the law required, for the surrender was only to be in conformity to law; and if a surrender was not re-

quired by law, then a neglect to surrender would not be a breach. Having been once liberated, the gaol keeper had no further power over him by virtue of his commitment on mesne process.   He was not required, by law, ever to surrender himself and go into close confinement.   It is true that in case a judgment should be rendered against him, and he should be committed on execution, and should under that commitment give bond for the liberties of the gaol yard, he would be required to surrender himself and go into close confinement, if not discharged, according to law, within nine months after having been first admitted to the liberty of the yard.

But it would be preposterous to suppose, that this bond could reach that case, or that the parties contemplated such a contingency.

If, in the case before us, the principal obligor had fully kept the first part of the condition, by not departing without the prison limits until lawfully discharged, it must have been a very extraordinary stretch of construction that could, under any circumstances, have held him liable for a breach of the residue.   It is either uncertain or insensible, or it was impossible at the time of making it, and has continued so ever since.   In either case, it has no legal operation upon the bond.   If the words of a condition are insensible, the obligation shall be single.   *Com. Dig. Obligation, E.*   So if the condition of an obligation was impossible at the making, the obligation is single.   *Com. Dig. Condition, D.* 8.   If the condition of a bond be impossible at the time of making it, or be to do a thing contrary to some rule of law that is merely positive, or be uncertain or insensible, the condition alone is void, and the bond shall stand single and unconditional, 2 *Blackst. Com.* 340. When a condition is so insensible and uncertain that its meaning cannot be known, it is void and the obligation must be performed. 5 *Dane's Abr.* 180; sec. 10.   Such is precisely the case at bar.   If the parties intended any thing by the clause under consideration, it is so obscurely expressed as to be impossible to ascertain it.   Probably nothing was intended ; that it was inserted by mistake ; or rather, through inadvertence, was not obliterated from a printed

blank prepared for a different case. This suggestion is, however, not to influence our judgment. We must take the bond as it is, and ascertain the meaning of the parties if we can ; and that intention, when ascertained, is always to be chiefly regarded. But if the parties make use of language, which conveys no meaning, it consequently can have no effect. An instrument good without it, is not vitiated, void without it, is not aided by its insertion. If the whole condition be insensible, the bond is relieved from its double character, and becomes absolute. If the condition is in the conjunctive, and one branch is sensible, certain and possible, and the other not, it is a good condition for performing the former, and the latter is to be wholly disregarded. *Cro. Eliz.* 780 ; 2 *Jac. Law Dict. Condition II.*

These are common law principles ; but as was said by the court in *Winthrop v. Dockendorff,* they are those by which this and every bond are to be construed. Whether they be bonds at common law, or statute bonds, the same principles apply to each.

By thus relieving this bond from the latter clause in the condition, it becomes strictly conformable to the statute, and, as the alleged breach is admitted by the defendants, the plaintiff is entitled to judgment.